CALEDONIA,
March,
1835.

Dow
vs.
Smith.

</div>

---

ISRAEL CUTTING, *Qui tam*, *vs.* JOSEPH STONE.

<div style="text-align: right;">

CALEDONIA,
March,
1835.

</div>

The laying out and establishing the limits and bounds of a village in these words—"Commencing with Samuel Hall, thence to William Scales, also including John W. Dana, Jason and Warren Britt and Thomas Lyford,"—is uncertain and insufficient.

It must be so described as to include *territory*, with certain outlines and boundaries.

This was an action to recover the penalty of ten dollars given by statute for resisting the plaintiff in driving the defendant's cow to pound, and rescuing her. The cause came by appeal to the county court, and was tried on the general issue joined to the court. On the trial the plaintiff offered in evidence the application to the selectmen of Cabot, which was as follows:

" *To the selectmen of the town of Cabot:*

We your petitioners request you to lay out and establish a village in said town, to extend from Samuel Hall's to William Scales' and also to John W. Dana's and Thomas Lyford's inclusive, to be hereafter known and designated by the name of Jacksonville ; as in duty bound your petitioners will ever pray.

Cabot, Jan. 11, 1834.

   (Signed)     ISRAEL CUTTING," and others.

This was objected to by the defendant, but admitted by the court. The plaintiff proved that more than seven of the signers thereto were freeholders in said town, and that there was a village of more than ten dwelling houses. The plaintiff offered in evidence a copy of the town clerk's record of the doings of said selectmen, which was as follows:

" Whereas, application has been made to us by more than seven freeholders of the town of Cabot to set off and establish a village

CALEDONIA,
March,
1835.

Cutting
vs.
Stone.

in said town—We hereby set off and establish a village boundec as follows, viz : Commencing with Samuel Hall, thence to William Scales, and also including John W. Dana, Jason and Warren Britt and Thomas Lyford.

<div style="text-align:right">

LEONARD ORCUTT, ⎫
JOSEPH FISHER, ⎬ Selectmen.
MATTHIAS STONE, ⎭

</div>

Cabot, Jan. 20, 1834."

Which was objected to by the defendant, but was admitted by the court. The plaintiff proved that the selectmen only posted up three public notices of their said doings according to law ; and there was no other proof than is above stated of the setting out the boundaries or limits of the village.

The plaintiff proved that the defendant did suffer his cow to go at large in the highway between the houses of the persons afore-said, where she was taken by the plaintiff, who sent two men with her to pound. On the way the defendant resisted them and res-cued the cow, February 10th, 1834. The county court rendered judgment for the plaintiff, and the defendant filed exceptions, which were allowed, and the cause came for revision to the supreme court.

*Bell and Cushman for the defendant.*—1. The defendant con-tends, that the application to the selectmen to set out and establish a village, required by the statute to be in writing, should upon the face of it show the applicants to be freeholders of said town of Cabot.

2. Said application in writing does not desire or " request" the selectmen to lay out and establish the " *limits and bounds*" of a village, but to " lay out and establish *a village*." See application, and statute, 456.

3. There is a variance between the description of what is to be considered the *limits* and *bounds* of the village in the application, and the doings of said selectmen. Jason and Warren Britt are not in the application.

4. The copy of the record should not have been admitted in evidence. The selectmen did not by their return in writing to the town clerk of Cabot set out any definite "limits or bounds" for said village. The extent is uncertain. No extent of territory is included. *Persons* only are embraced in the description.

5. The proof does not support the declaration. There is a fa-tal variance.

The declaration alleges, that plaintiff was driving the cow to pound.

CALEDONIA,
March,
1835.

Cutting
vs.
Stone.

The evidence is that two other men were driving said cow.

The declaration alleges that defendant rescued the cow from plaintiff.

The evidence proves that defendant rescued the cow from others.

This is a *material* and *fatal* variance. For as penal statutes are to be strictly construed, and as by the statute the person injured by the rescue only can prosecute, the plaintiff cannot maintain this action unless *he* was driving and the cow was rescued from *him*.

The maxim, " that what one does by another he does by himself," does not apply in this case.

Our statute makes it penal to resist an officer, but no one is subject to the penalty for resisting the agent of the officer.

*Davis for the plaintiff.*—By an act passed Nov. 11, 1819, the right of impounding neat cattle was extended to the case of persons, who, residing within the limits of villages of a certain number of houses, laid out and established as in said act prescribed, should suffer them to run at large. If, agreeably to the provisions of this act, a village was legally established in Cabot previous to Feb. 10, 1834, and if the defendant suffered his cow so to run at large, he then living in said village, and if the plaintiff, on taking her up and attempting to drive her to pound, was resisted by defendant, a case is made out to recover the penalty under the general laws referred to.

All these facts, except such as depended upon written documents alluded to in the bill of exceptions, and which go merely to the fact of the establishment and due notification of such village, were found by the court in favor of the plaintiff, and are consequently not now open to controversy. The papers are,

1. The application of more than seven persons, proved to have been freeholders in said town, to selectmen.

2. The copy of the proceedings of the selectmen in the matter, as placed on record in the town clerk's office.

3. The notification, triplicates of which were posted up by the selectmen within the village, as required by the second section of the village law.

These papers were all objected to by defendant on trial, and the only questions then made, and we suppose the only ones which will now be made, relate to the regularity and adaptation to prove the fact of the establishment and public notification of the village.

As to the first and last, they may be disposed of in few words.

CALEDONIA,
*March,*
1835.
─────
Cutting
*vs.*
Stone.

There was probably no occasion to have offered the application, as that is not required to be made a matter of record, and it is to be presumed as stated by selectmen as the foundation of their proceedings. There seems to be no objection to the notification, other than such as applies to and constitutes the principal one to the paper number two, which was, that it does not lay out the limits of said village with sufficient certainty and clearness to be valid against any one.

It is true that it is not laid out by points and distances, so that its exact boundaries could be ascertained by compass and chain, but the plan we submit, accompanied by the explanation of one of the selectmen, will leave no doubt that, for all practical purposes, the limits are sufficiently ascertained, particularly on the main street running north and south, on which the defendant resided, and in which, between Hall's and Scales' houses, the cow was suffered to run at large.

It would be useless to inquire into the precise limits east and west, or on any other points between those and the other cardinal points, or whether the tract laid out be circular, or eliptical, a square or parallelogram. If this kind of accuracy be insisted upon, we should be obliged to pronounce the treaty between Great Britain and her revolted colonies in 1783, acknowledging the independence of the latter, void and of no force, because it failed to define with any certainty our limits on our north-eastern and north-western frontiers, difficulties which, after more than fifty years fancied enjoyment of national existence, are still unremoved. Have New York and New Jersey, for this forty years, had no existence as states of this Union, because until very recently it has not been ascertained where the boundary line runs between them?

In fine, how many school districts are now constituted or changed in extent by transferring A. B. or C. D. from one to another, meaning thereby to include in the transfer the farms owned by such persons; and would any one about whose position no doubt can be entertained think of questioning the fact of the existence of such district because of a disputed boundary to such farm?

The opinion of the court was delivered by

COLLAMER, J.—The statute of 1819 provides, that the selectmen, on proper application, are to "lay out and establish *the limits and bounds*" of the village. It forbids, under somewhat severe penalties, the permitting cattle, horses, geese, &c. to run at large within said bounds, and permits the impounding horses and cattle to enforce the penalty.

CALEDONIA,
March,
1835.
Cutting
vs.
Stone.

It is obvious that the bounds should be definite and distinct, and the words of this statute are more explicit than those which relate to the liberties of jail yards. Much liberality has been indulged in relation to *descriptions* in deeds, but even there it has been considered necessary to have so much of description as that a surveyor could, with persons to identify landmarks and localities, survey out the *tract* of land. The words " bounds and limits" in the statute clearly imply that there shall be set out and described a territory, a tract, a certain superfices with distinct boundaries ; and the security of the community against penalties and forfeitures imperiously demands this. Here the description is—" Commencing with Samuel Hall, thence to William Scales, also to include J. W. Dana, Britt and Lyford." Whether Hall and Scales are inclusive or exclusive, is uncertain. Even if we were here to say these *persons* meant their *houses*, yet it includes no certain territory. It names some *lines*, which *enclose* nothing. No two surveyors could, by this description, survey out the same tract. This is not setting out *limits and bounds* as the statute, and the public safety, require ; and if it was not binding on all persons, it was not binding on the defendant.

<div align="center">Judgment reversed.</div>