## No. 14,195.

## ARTHUR RICHARD vs. CYPREMORT DRAINAGE DISTRICT.

### SYLLABUS.

1. Drainage districts established under laws existing at the time of the passage of Act 12 of 1900 cannot take advantage of the act without first reorganizing under its provisions.
2. Drainage districts established under laws in existence at the time of the adoption of Article 281 of the Constitution may take advantage of the provisions of this article without reorganizing under Act 12 of 1900.
3. Drainage districts organized under Act 37 of 1894 may levy the tax and issue the bonds authorized by Article 281 of the Constitution without having recourse to the provision of Act 12 of 1900, passed for the purpose of carrying said Article 281 into operation; that is to say, such districts may levy said tax and issue said bonds under the combined provisions of said Act 37 and said Article 281, and irrespective of the said enabling act.
4. The limits of a taxing district must be fixed with certainty; especially where such district is authorized to impose a property tax, and still more especially where such tax must be voted for. Uncertainty in respect to the limits of such a district invalidates its organization, and as a consequence all taxes it may propose to levy and all bonds it may propose to issue. Any taxpayer of

the district may urge such invalidity in resistance of the tax or in prevention of the issuance of the bonds.

5. Drainage districts organized under Act 37 of 1900 cannot cut or open new drains without consulting the taxpayers of the district.

### ON REHEARING.

The police jury has the power to divide the parish into drainage districts.

Boundaries g'ven by this body in its ordinance are set out with certainty enough to enable a surveyor properly to trace the lines.

The southern boundary was not specially contested; it is sustained as sufficient as set out in the ordinance of the police jury and afterward by a map deposited at the courthouse, of which it is conceded the voters of the district had notice. The notice of election referred to this map and the ballots also.

The canal which was to form part of the southern line was a canal proposed at the time that the ordinance was adopted and its course was well known, and it, as well as the limits of the arable land are *indicia* enough of the bounda ries, to prevent uncertainty as to the limits of the drainage district.

APPEAL from the Twenty-third Judicial District, Parish of St. Mary —*Allen, J.*

*D. Caffery & Son,* for Plaintiff, Appellant.

*Mentz & Borah,* for Defendant, Appellee.

On rehearing by BREAUX, J.

The opinion of the court was delivered by

PROVOSTY, J. The plaintiff, an owner of property within the limits of the defendant drainage district, enjoins said district from levying a tax and from issuing bonds.

The two first grounds of injunction may be stated together. They are to the effect that the tax which defendant has undertaken to levy, and the bonds which defendant has undertaken to issue are those provided for in Article 281 of the Constitution; and that this Article not being self-operative, its provisions can be taken advantage of only by following the provisions of Act 12 of 1900, passed to make it operative; and that defendant has not even attempted to follow the provisions of said Act.

It is true that defendant has not pretended to follow the provisions of said enabling Act, but we do not think it was necessary to do so. Act 37, under which defendant is organized, contains provisions for the holding of such an election as is required by Article 281, and the Article itself, after conferring directly the authority to levy the tax

and to issue the bonds, goes on to make provision on all essential points. Act 37 makes no mention of bonds, and in a certain sense, therefore, it makes no provision for holding an election to consult the taxpayers on the issuance of bonds; but Article 281 evidently contemplates that the machinery for the issuance of the bonds shall be the same as for the imposition of the tax and for the latter Act 37 does make provision.

The third ground of injunction is that the limits of the district are not fixed with sufficient certainty.

The necessity for fixing with certainty and precision, the limits of a district empowered to levy a property tax especially when the tax must be voted for, needs but to be mentioned to be recognized. Unless the limits are thus fixed it is not possible to know with certainty what property is taxable and what persons may participate in the elections, and certainty on these points is as essential as on the rate of the tax, or on any other feature of the taxing scheme. The authorities cited by plaintiff are conclusive to the effect that the limits of a municipality must be fixed with certainty and precision. Dillon Mun. Corp. (4th Ed.), Sec. 182; A. & E. Ency. of L., Vol. 15, p. 1001 (1st Ed.); Cutting vs. Stone, 7 Vt. 471. It is not true to say that because these authorities have reference to municipalities they are not applicable. The reason why the limits of a municipality must be fixed with certainty is that a municipality is called upon to exercise the governmental powers of taxation and police; and of these two powers the one most liable to abuse and most needing to be hedged in by metes and bounds, is the very one that defendant is empowered to exercise, namely, that of taxation. The authorities, therefore, apply with full force to defendant.

The ordinance fixing the limits of the defendant drainage district, reads, as follows:

"The said district to embrace and comprise that part of the Parish of St. Mary described as follows, to-wit:

"North by a line on the south side of Bayou Teche, located on the summit of the ridge which divides the waters that flow into the Teche from those that flow back from the various small sloughs to the swamp on the South; east by a line on the east side of Bayou Choupique (not Yokely) situated on the summit of the ridge which divides the waters that flow into Bayou Choupique from those that flow into Bayou Yokely; south by the proposed canal itself, or, where the canal does not

extend, by the limit of the arable lands; west by a line on the east side of Bayou Cypremort on the summit of the ridge which divides the waters that flow into Bayou Cypremort from those that flow back through the various small sloughs to the swamp on the south.

"These lines are to be drawn so as to comprise all the lands whose waters will naturally flow into the proposed canal, and no, other. The approximate location of the canal will be from a point in Bayou Choupique near Sabin Rodriguez's plantation running in a westerly direction through the marsh and swamp, connecting with all the slough and drainage ditches from the high lands on the north, until what is known as the Bodin Canal on the west boundary of L. P. Patout's property is reached. Then on some point on this canal, to be determined later on an outlet will be cut into the most feasible one of the several marsh bayous which leads to the gulf.

"At the point where the canal crosses the right of way for water left open by L. P. Patout, a branch canal is proposed to be dug in a northerly direction, crossing the cypremort branch of the Southern Pacific Railway, and extending across the public road at Arnod's Lane, and leading into the low lands north of the road."

Under the maxim, *id certum est quod certum reddi potest,* the north, the east and the west boundaries of the district may be held to be fixed with sufficient certainty by this ordinance. We have to assume that the ridges in question are continuous, and that the location of the line of their summit is a matter of mere engineering skill. But the southern boundary is fixed neither by reference to landmarks nor by the adoption of a line such as would need only to be located by a civil engineer; it is stated that the line is "to be drawn"; and that its starting point shall be "near Sabin Rodriguez's plantation"; and that its course shall run in a westerly direction until the canal on the west boundary of L. P. Patout's plantation is reached; and that the line in the parts not thus marked shall be along the limit of the arable lands. That this prescription of limits is too vague, is perfectly plain.

The discretion confided to the Police Jury for the fixing of this boundary has to be exercised by the Police Jury itself, and cannot be delegated by it to some other functionary. This is elementary.

Defendant contends that plaintiff has no interest in raising this question of the indefiniteness of the boundary, because his land is admitted to be within the district. We cannot see the force of this contention. Plaintiff is not trying to exclude his property from the

district, but is objecting to an illegal tax. He has a direct interest. The proposed tax and the proposed bond issue, if illegal, operate as a cloud upon his title, which he has a right to remove. The fixing of this boundary will determine legally what property must share with his in the expenses of the district; it may determine also whether certain voters are inside or outside of the district and have or not a right to participate in the elections, etc., etc. For these reasons, and probably for others, he has an interest in contesting this question.

As to the fourth ground, all we need say is that a drainage district created under Act 37 of 1894 must conform to Section 3 of that Act in respect to the necessity of consulting the taxpayers when new drains are to be cut and opened. Act 12 of 1900 dispensed from that necessity only the districts organized under its own provisions. By its express terms, Section 16, its provisions are not to affect drainage districts not organized under itself.

The prescription pleaded by defendant is inapplicable to the irregularities on the score of which the injunction is maintained.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be set aside and that the defendant herein be enjoined and prohibited from levying the tax and issuing the bonds, provided for in the ordinance recited in the plaintiff's petition herein, and that the said defendant pay the cost of this suit.

## ON THE REHEARING.

BREAUX, J. We, on the rehearing, take up for decision the point of disagreement between plaintiff and defendant regarding the southern boundary of the drainage district.

All the issues heretofore were decided adversely to the plaintiff, except the one relating to the south line of the Cypremort Drainage District. This line, on examination, does not seem uncertain to an extent that it cannot be traced and made sufficiently certain and enable interested parties to determine the extent of the lands in the district. A map before us greatly assists in our reconsideration of the question. It (this map) construed with the ordinance fixing the boundaries warrants the conclusion that the south line is capable of being made certain.

The statute has delegated to the Police Juries the power to divide their respective parishes into districts and to fix their limits. In the exercise of that power, the Police Jury in this case has designated the

boundaries. The court in the opinion handed down found the north, east, and west boundaries sufficiently certain. With the assistance of the map the southern boundary appears to us as certain as those first mentioned above. If the designated ridges and other natural marks along the front and two sides are boundaries enough, the rear line has as many points to sustain it.

This line must be drawn to include the lands, to quote from the ordinance, "whose waters will naturally flow in the proposed canal and none others." This condition secures to each land owner the assurance this his land is to be drained by the projected canal. The land owner can compel the enforcement of the laws so as to share in the proportionate benefit of the drainage. If this condition be carried out in all the drainage districts the law will not fail in its purpose and great good will be accomplished. But this assurance to each owner of benefit to be received in return for the taxes paid of itself would not be a sufficient compliance as there must be boundary lines in addition. The ordinance orders that the limits of the arable lands are to be taken as the basis for the south line where the canal does not extend.

We notice that the rear line is anything but straight, a fact due, we infer, to the necessity of avoiding the very low marshes near the coast of the gulf and of draining the higher lands.

The principal drains, as we understand, are to be opened from the north to the south line. This line is to touch the western terminus of the drain and where it does not extend as far south as needful to effect the drainage intended, there it is to follow the limit of the arable lands. This is not as clear as it might have been, yet it can, we think, be located with reasonable certainty. There are other descriptions in the ordinance that are confusing. We have sought to find the meaning of the ordinance as relates to the south line by interpreting only the phrase "south by the proposed canal itself, or where the canal does not extend by the limits of the arable lands," and construing it with the whole evidence, we have concluded not to set aside the ordinance as null and void.

The evidence shows that the voter knew of the map to which we have before referred. In the election notice which was published for thirty days, it was stated that bonds were to be issued and the proceeds applied in constructing a system of drainage in the district to be delineated in accordance with the map which was circulated in the district and made known to the voters.

The plaintiff's contention is that although, as he concedes, the tax-payers by voting the tax countenanced the system of drainage advertised as before mentioned and sanctioned to some extent at least the method followed by the use of a map to indicate lines, yet that this is not to be considered in the light of a ratification, for the statute contemplates a form to be followed from which there should not be any material deviation; that the manner of opening the drains had not been matured nor the location of the drain fixed as required by vote. As a condition precedent it was necessary to fix the limits. We think this was done to an extent sufficient to make all parties concerned aware of the lines as well as of the location of the drains. That this information was given by the ordinance, the advertisements, and the maps. Besides, the evidence discloses that it was impossible to describe the location and extent of the drain in a printed ballot, but that they were minutely described on a map, made by the secretary of the Drainage

Board, who is a surveyor by profession. This is sufficient compliance with the law as relates to description of location of districts and drains.

We are warranted in concluding that every voter was notified of the location of the canal, the drains to it, and of the limits of the district.

In leaving the subject, we must say that while there was not a map like distinctness of trace in the ordinance in question of the Police Jury, there is sufficient description of the district to sustain the boundaries as described. We annex a skeleton sketch of the district for reference.

It is, therefore, ordered, adjudged and decreed that plaintiff's action be and the same is hereby dismissed, the injunction dissolved and plaintiff's demand rejected.

It is further ordered, adjudged, and decreed that the legality of the defendant organization is hereby recognized and that it was organized in accordance with the laws and the constitution and that it has the right and authority conferred on drainage district organizations.

PROVOSTY, J., dissents, holding that the boundaries of a taxing district must be fixed by the ordinance itself creating the district.